FARMERS ELEVATOR MUTUAL INSURANCE COMPANY, Appellant,

v.

Fred JEWETT et al., Appellees.

No. 9871.

United States Court of Appeals Tenth Circuit.

May 17, 1968.

Gerrit H. Wormhoudt, Wichita, Kan. (Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk, Philip Kassebaum, John E. Rees, Robert T. Cornwell, Willard B. Thompson, and Richard I. Stephenson, Wichita, Kan., on the brief), for appellant.

Robert M. Collins, Wichita, Kan., and Lowell Dierking, Caldwell, Kan. (Tom Harley, Wichita, Kan., on the brief), for appellees.

Before MURRAH, Chief Judge, and BREITENSTEIN and HILL, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is an action in the nature of interpleader. Appellant, Farmers Elevator Mutual Insurance Company, issued a warehouseman's bond under the United States Warehouse Act, 7 U.S.C. §§ 241–273, to Sam Croft doing business as Sam Croft Grain Company in Kansas. The district court gave summary judgment for appellee Jewett and 40 others. Farmers has appealed on the ground that the Jewett group held only scale tickets rather than warehouse receipts and, hence, are entitled to no recovery on the bond. The facts are stipulated.

■ Although the parties have raised no jurisdictional question, the circumstances are such that we must do so on our own motion.[1] Section 1335, Title 28, permits an action in the nature of interpleader when there is at least $500 in controversy and there are adverse claimants of diverse citizenship. The plaintiff is required to deposit the money in court or to give bond "with such surety as the court or judge may deem proper." Here Farmers gave bond without surety and the court approved it without giving any reason for dispensing with surety. We do not approve of this practice. However, none of the claimants objected, and the supersedeas bond is in an adequate amount with corporate surety.

■ Diversity of citizenship is shown among the claimants and between all the claimants and Farmers. No controversy exists among the claimants be-

cause they all hold under scale tickets and the amount of their claims, about $86,000, is less than the amount of the bond. A controversy does exist between them and Farmers because Farmers denies liability under its bond to scale ticket holders. The statute applies both to true interpleader suits and to actions in the nature of interpleader. Such actions may be maintained by a plaintiff who claims an interest in the fund under dispute.[2] The complaint alleges that the claims of the scale ticket holders plus the claims of the warehouse receipt holders "may exceed" the $133,000 penal sum of the bond. It was later established that the claims totaled about $115,000. In a case relating to the question of a "good faith" claim for more than the jurisdictional amount, the Court said in Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890, that dismissal is not justified unless it appears to a "legal certainty" that the required amount is not in controversy.[3] In the instant case no denial is made of the allegations of the complaint pertaining to jurisdiction. In the circumstances we cannot say to a "legal certainty" that "good faith" was lacking from the assertions that the claims may exceed the bond.

■ The complaint also says that Farmers "has been subjected to a multiplicity of questionable demands" and "may be subjected to a multiplicity of suits and to multiple liability." In State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 534, 87 S.Ct. 1199, 1205, 18 L.Ed.2d 270, the Court said that "interpleader, in discharge of its office to protect the fund, should also protect the stakeholder from vexatious and multiple litigation." In the case at bar an action in the nature of interpleader performs that function. We believe that jurisdiction lies under § 1335.

1. See Treinies v. Sunshine Mining Co., 308 U.S. 66, 70, 60 S.Ct. 44, 84 L.Ed. 85.

2. See State of Texas v. State of Florida, 306 U.S. 398, 406–407, 59 S.Ct. 563, 83 L.Ed. 817, and Brisacher v. Tracy-Col-

lins Trust Co., 10 Cir., 277 F.2d 519, 525.

3. See also Emland Builders, Inc. v. Shea, 10 Cir., 359 F.2d 927, 928–929.

As a licensed warehouseman under the United States Warehouse Act, Croft gave the required bond with Farmers as surety. Pertinent provisions of the bond secure the faithful performance by Croft, as a licensed warehouseman, of his obligations under the Act and regulations of the Secretary of Agriculture promulgated thereunder. The Jewett group delivered wheat to Croft and received only scale tickets which show the amount of wheat, the date of delivery, and the name of the owner. This wheat was commingled with wheat for which warehouse receipts were issued. Croft did not make delivery of wheat to various depositors including the Jewett group. Farmers satisfied the claims of those holding warehouse receipts but denied liability to those holding only scale tickets.

The form and printing of warehouse receipts are covered in the regulations of the Secretary. See 7 C.F.R. §§ 102.18 and 102.22. The scale tickets held by the Jewett group admittedly do not comply with these regulations. Section 102.30, 7 C.F.R., provides that receipts must be issued for all grain stored in a warehouse.

■ In Hartford Accident & Indemnity Co. v. State of Kansas ex rel. Fatzer for Benefit of Meitl, 10 Cir., 247 F.2d 315, we allowed recovery under the Kansas warehouse licensing statutes, K.S.A. § 34–223 et seq., to a depositor of grain who failed to obtain a warehouse receipt. The decision is not controlling here because of differences between the federal and the Kansas statutes. In Stevens v. Farmers Elevator Mutual Ins. Co., 197 Kan. 74, 415 P.2d 236, 241, the Kansas Supreme Court allowed recovery from a surety under the federal act by a depositor of grain who obtained a weight ticket rather than a warehouse receipt. That decision is persuasive but not controlling authority because the interpreta-tion of the federal act and the liability under bonds issued pursuant thereto is a federal question on which state decisions are not conclusive.

The Act provides a national system of warehouse bonding for the protection of depositors, sets up a national system of inspection and grading of grain, and established warehouse receipts as a secure and readily negotiable form of property.[4]

■ Warehouses licensed under the Act are required to issue receipts for grain stored therein but not for "nonstorage grain." See 7 U.S.C. § 259 and 7 C.F.R. § 102.30. Those delivering grain to such warehouses are charged with knowledge of the provisions of the statutes and the regulations.[5] The licensed warehouseman is charged also with such knowledge. No claim is made that the wheat with which we are concerned was "nonstorage grain." The stipulation of the parties recites that the warehouseman received the wheat "for deposit"; that he commingled it with wheat covered by warehouse receipts; that he issued the scale tickets; that he did not pay for the wheat; and that he cannot satisfy the claims for wheat. The receipt of the quantities claimed appears on the scale tickets. Nothing on those tickets indicates any reason for delivery except storage. They are not, and do not purport to be, sales slips.

■ One of the conditions of the bond is that the warehouseman shall faithfully perform "all obligations of a licensed warehouseman under the terms of the Act." The Act, § 247, requires a bond to secure performance of obligations under the Act and of "such additional obligations as a warehouseman as may be assumed by him under contracts with the respective depositors of agricultural products in such warehouse." The Jewett group deposited wheat. The ware-

4. See House Report appearing at 53 Cong. Rec. 7063–7064; Senate debates at 53 Cong.Rec. 10772–10778; Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 235 n. 13, 67 S.Ct. 1146, 91 L.Ed. 1447; and Greater Baton Rouge Port Commission v. United States, 5 Cir., 287 F.2d 86, 90 n. 4, cert. denied 368 U.S. 985, 82 S.Ct. 600, 7 L.Ed.2d 523.

5. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 385, 68 S.Ct. 1, 92 L.Ed. 10.

houseman received it. He did not give the depositors the receipts which the Act requires. He violated his duty under the Act. By receiving the wheat for storage he was under an obligation to redeliver upon demand and payment of his charges. This was an obligation which he assumed with the depositors and, in our opinion, is an obligation within the intent of § 247 and consistent therewith.

To permit the surety to take advantage of the failure of the warehouseman to do what the law compels him to do would permit a surety to profit by its principal's wrong. We see nothing in the Act which requires such a result.

It must be remembered that in the case at bar the total claims of the warehouse receipt holders and of the scale ticket holders do not exceed the penal sum of the bond. We are not called upon to decide—and do not decide—whether warehouse receipt holders should recover first and in full if total claims exceeded the penal sum of the bond.

Affirmed.